JOSEPH M. EBELING, JR., v. FRED J. SWAINE MANUFACTURING COMPANY, a Corporation, Appellant.—No. 40446.—209 S. W. (2d) 892.

Division Two, March 8, 1948.

Motion for Rehearing or to Tranfer to Banc Overruled, April 12, 1948.

*Joseph N. Hassett* and *Roy McKittrick* for appellant.

*David A. McMullan* and *Michael J. Ebeling* for respondent; *Doris J. Banta* for counsel.

552

[893] ELLISON, J.—This is an appeal from the circuit court of the City of St. Louis in a suit for commissions and an accounting, wherein the plaintiff-respondent Ebeling recovered a judgment against the defendant-appellant Fred J. Swaine Manufacturing Company for $27,815.37, principal and interest. Appellant's principal contentions are: (1) that the trial court had no jurisdiction of the subject matter of the cause of action, because the suit was brought in equity whereas it should have been at law; (2) and that the contract for the commissions was void under certain Government regulations as alleged in paragraph 7 of appellant's second amended answer, which the trial court erroneously struck out on respondent's motion.

The facts in brief are as follows. The transcript on appeal calls respondent Ebeling's petition a "Petition in Equity", the cause was tried to the court without a jury with the acquiescence of the appellant; and the final decision of the court "ordered, adjudged and decreed." Appellant's complaint as to the form of action is made for the first time on this appeal. The petition was filed in May, 1944. Our new Civil Code went into effect January 1, 1945. Laws Mo., 1943, p. 357, Sec. 3. That section of the code provides it shall govern all proceedings brought after that date, and also further proceedings in actions then pending, except insofar as the trial court shall deem its application in a particular case unfeasable and unjust.

The petition alleged, and respondent's evidence tended to prove that he entered into an oral agreement with the appellant in 1942 whereby, for a 5% commission on gross returns, he was to procure for appellant subcontracts for it from the Emerson Electric Company, on bids as the Government required, in an amount such as to entitle him to approximately $24,648.10 commissions. But he further alleged he was not informed, and had no means of obtaining information, as to the amount and volume of business he had obtained for appellant, or the revenue appellant had received therefrom, which information could be ascertained only by an examination of appellant's books, in consequence he prayed for an accounting of the orders and gross receipts obtained by appellant from the Emerson Electric Company through his (respondent's) efforts, so that the amount due him could be ascertained, and for judgment for said sum of $24,648.10 with interest and costs.

[894] The record shows, and the trial court found, the gross revenue received by appellant on these orders was $572,996.10, covering 20 orders and under three contracts. These figures were obtained in the following manner. In the beginning a pre-trial conference was held, at which it was agreed by counsel that the initial trial proceedings would be confined to the questions: whether or not there was a contract between the parties; and if so, what that contract was. It was further agreed that if the court decided there was a contract such as had been pleaded, then the court would make further orders with respect to an accounting. Pursuant to this plan the initial hearing was held and the court found the contract had been made, and ordered the appellant to make an accounting. Thereafter the appellant rendered the accounting which was prepared by an auditing company in the form of a report to appellant. There is no dispute about the figures.

Appellant's second amended answer denied there was a contract between the parties. Paragraph 7 thereof, which the trial court struck out, alleged that the prime contractor, Emerson Electric Company, was paid on a cost plus fixed fee basis for the war supply

manufacturing· work done by it; and that the subcontracts between it and appellant were on the same basis. The paragraph then further alleged that Executive Order No. 9001 issued under a Federal War Powers Act, 54 Stat. 712, 875; U. S. C. A., Title 50, Appendix, sec. 1171, required every such contract to contain a warranty that it had not been secured or solicited for a commission by any person other ' than a bona fide established commercial or selling agency maintained by the contractor for the purpose of obtaining business; and that upon a breach of the warranty the Government should have the right to annul the contract,. or to deduct the wrongful commission. Concluding, the paragraph alleged respondent was not such a regular selling agent for appellant, and that his commission contract with appellant was therefore void and illegal.

■ Appellant's brief starts with the assumption that respondent's action was a suit in equity—this apparently because his petition sought an accounting and alleged he ·could not ascertain the amount due him from appellant without the accounting; and perhaps also because of the attitude of the parties during the trial. Then appellant argues the petition wholly failed to ·state a cause of action in equity because it did not allege respondent had no adequate remedy at law, and that a fiduciary or trust relationship existed between him and appellant.[1] Nevertheless, at the same time appellant asserts the true character of the action must be determined from the allegations of the petition as a whole, which is correct.[2] And if it did not state a good cause of action in equity, then it must have stated an action at law—or none at all.

In our opinion the petition stated an action *of* account, or more likely *on* account, as defined in the Dahlberg case, supra,[1] both actions at law. It wound up by praying judgment for the specific amount respondent *thought* was due him, with interest and costs. And the trial court was a court of general jurisdiction both at law and in equity, and had jurisdiction of the subject matter of all such causes of action, notwithstanding it may have been an equity division in the circuit court system in St. Louis.[3] If the cause belonged in a law division appellant should have requested a transfer thereto.[4] But it made no complaint below on the grounds now asserted here. In nearly all the decisions it cites the question [895] was raised

· [1]Citing: Palmer v. Marshall (Mo. App.), 24 S. W. (2d) 229, 233-4(2-4); Dahlberg v. Fisse, 328 Mo. 213, 220-1, 40 S. W. (2d) 606, 609(1-7); State ex rel. Lambert v. Flynn, 348 Mo. 525, 532(4), 154 S. W. (2d), 52, 57(7-8); State ex rel. Brickey v. Nolte, 350 Mo. 842, 851-2, 169 S. W. (2d) 50, 55.

[2]Dahlberg v. Fisse, supra, 328 Mo. l. c. 220, 40 S. W. (2d) l. c. 609; Ebbs v. Neff, 325 Mo. 1182, 1191(1), 30 S. W. (2d) 616, 620(3).

[3]State ex rel. MacNish v. Landwehr, 332 Mo. 622, 628(4, 5), 60 S. W. (2d) 4, 7(4-6, 7); In re Adoption of Zartman, 334 Mo. 237, 243(1), 65 S. W. (2d) 951, 954(1).

[4]Quality Realty Co. v. Wabash Ry. Co., 50 Fed. (2d) 1051, 1054(3, 5); Miller v. Union Assur. Soc., 39 Fed. (2d) 25, 28(2).

below and in several cases by prohibition in an appellate court. On the other hand a number of authorities hold such issues are waived if not raised in the trial court.[5]

They did not involve jurisdiction of the subject matter, or the total failure to state a claim upon which relief could be granted. Therefore, under Sec. 140 of the Civil Code we cannot consider them, since they were not raised or decided below. Further, that section forbids a reversal of any judgment unless it appears that error was committed against the appellant materially affecting the merits of the action; and we find there was no such error. We have no doubt that this section of the Code applies to the instant cause within the meaning of Sec. 3 thereof, notwithstanding the Code did not go into effect until after the action was instituted. The assignment is overruled.

The other assignment in appellant's brief complains that the trial court erred in striking out paragraph 7 of its second amended answer. This paragraph, as will be remembered, alleged that respondent's commission contract with appellant was null and void because Executive Order No. 9001 of the United States Government, required all such contracts to contain a warranty that they had been procured by other than a regular selling agency maintained by the contractor; and that upon breach of the warranty the Government reserved the right either to annul the contract, or in its discretion to deduct the commission from the contract price. There is no showing that the Government exercised either of these options; or that by reason of the elimination of this paragraph of the answer appellant was prevented from introducing evidence on the issue.

Appellant's contention is that the Order nullified the respondent's contract because it imposed a *penalty*; and that appellant's own violation of the contract makes no difference, citing Miller v. Bowen Coal & Mining Co. (Mo. App.), 40 S. W. (2d) 485, 489(3-7), and Rainer v. Western Union Telegraph Co. (Mo. App.), 91 S. W. (2d) 202(1, 2). In the Miller case a life tenant, who had no interest in the inheritance, leased undeveloped land for coal mining and thereby committed waste under the statute, Sec. 3003, which subjected him to loss of the thing wasted, and treble damages. Held: he could not recover for the coal. In the Rainer case a shipper employed an unlicensed trucker to transport goods, in violation of the statute. The goods were perishable and the shipment was unreasonably delayed. Held: neither party could recover from the other.

---

[5] 1 C. J. S., p. 1091, sec. 41 a, b; 1 C. J., p. 1009, sec. 133; Oetting v. Green, 350 Mo. 457, 461(1), 166 S. W. (2d) 548, 550(1); Tidwell v. Waldrup, 347 Mo. 1028, 1032(4), 151 S. W. (2d) 1092, 1094(8); Crocker v. Barteau, 212 Mo. 359, 371(1), 110 S. W. 1062, 1065(2); Kessner v. Phillips, 189 Mo. 515, 531(6), 88 S. W. 66, 70(8).

But in both of these cases the statute either expressly or by plain implication wholly forbade the doing of the act at all.

.However, this is not the law in all circumstances. Sometimes courts will inquire how far and for what reason a transaction is prohibited as wrongful; and whether the loss to the party in delicto will exceed the requirements of public policy. 6 Williston on Contracts (Rev. Ed.) p. 5006, sec. 1784; pp. 5085-6, sec. 1789. See also Shulkin v. Shulkin, 301 Mass. 184, 16 N. E. (2d) 644, 118 A. L. R. 629, 640, note.

Looking to the facts of the instant case, Executive Order No. 9001 did not prohibit the employment of agents to procure war contracts on a percentage commission basis. Muschany v. U. S., 324 U. S. 49, 61-66, 80 L. Ed. 744, 65 S. Ct. 442. It merely provided that the contract should contain a warranty that the contractor would not employ other than a bona fide, established commercial or selling agency to obtain the contracts. Neither did it say the contract should be void if the warranty were violated. It merely reserved to the Government the option to annul the contract, or to deduct the commission of the spurious agent—which latter provision would recognize the contract as still existent and affect only the price, or cost, of the work.

It appears that the appellant had no regular commercial or selling agency prior to [896] the events here involved, except their regular salesmen of machinery made by the Company. The respondent conducted an insurance agency. He was not an engineer, but his business gave him some degree of familiarity with machinery and with other similar concerns. He carried all of appellant's insurance. According to his testimony he made the oral commission contract with appellant to obtain war contracts in April, 1942, and solicited five different machine companies, the last being the Emerson Electric Company, the prime contractor here, in June, 1942. The work required considerable retooling in appellant's plant, and the first contract with that Company was made in October, 1942, and the work completed on April 15, 1943. The second contract was made on April 17, 1943, and the work was finished and followed by the third contract made January 3, 1944, and finished in September or October, 1944. Respondent's service covered a period of a year and nine months. In the summer of 1943 trouble arose between him and appellant over his commission contract, but appellant paid him $1000 each month from August to November of that year. After that appellant refused to comply with the contract—in fact, denied there was any contract, or at least a legal contract.

Under the foregoing facts we think the trial court was right in ruling the case for plaintiff-respondent. In Reynolds v. Goodwin-Hill Corp., 154 Fed. (2d) 553, a similar commission contract was upheld by the United States Circuit Court of Appeals (2nd Cir.)

although it contemplated only one employment to obtain one manufacturing contract. It was held these contingent commission contracts might be made by The War Department to speed production even though they might otherwise be illegal. And they were also validated in Bradford v. Durkee Marine Products Corp., 40 N. Y. Supp. (2d) 448, Annotations 145 A. L. R. 1466n and 147 A. L. R. 1279n; and also in Singer v. Bruner-Ritter, Inc., 42 N. Y. Supp. (2d) 881, Annotation 148 A. L. R. 772n.

For these reasons the judgment below is affirmed. All concur.