256 F.2d 557
 J. D. STREETT & CO., Inc., a corporation, Appellant,
v.
UNITED STATES of America, Appellee.
UNITED STATES of America, Cross-Appellant,
v.
J. D. STREETT & CO., Inc., a corporation, Cross-Appellee.
 No. 15901.
 No. 15902.
 United States Court of Appeals Eighth Circuit.
 June 26, 1958.
 
 Bernard W. Weitzman and George C. Dyer, St. Louis, Mo. (Ray T. Dreher, St. Louis, Mo., was with them on the brief), for J. D. Streett & Co., Inc.
 Seymour Farber, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Harry Richards, U. S. Atty., Robert E. Brauer, Asst. U. S. Atty., Washington, D. C., and Morton Hollander, Atty., Dept. of Justice, Washington, D. C., were with him on the brief), for the United States.
 Before SANBORN, VOGEL and MATTHES, Circuit Judges.
 SANBORN, Circuit Judge.
 
 
 1
 The first of these appeals (No. 15,901) is from a judgment in favor of the United States for $25,000 in an action brought by it against J. D. Streett & Co., Inc., as defendant, for breach of a contract by virtue of which the latter acquired certain war surplus real property consisting of land, buildings and railroad facilities within what was known as Jefferson Barracks, St. Louis County, Missouri. The Government has taken a cross-appeal (No. 15,902) on the ground that the court erred in failing to add accrued interest to the award of damages.
 
 
 2
 The claim stated in the complaint of the Government, upon which its action was based, was, in substance, that in April of 1949 the defendant offered to purchase from the Government the property in suit; that in June of 1949 the defendant employed James A. Waechter, an attorney, to solicit and secure a contract with the Government for the sale by it to the defendant of the property, and agreed to pay Waechter $25,000 as a fee, contingent upon his bringing about the sale; that on August 26, 1949, the defendant executed an "Invitation for Bids," issued by the Government, which contained the following provision:
 
 
 3
 "Covenant Against Contingent Fees. The successful bidder warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the Government the right to annul the contract or at its option to recover from the successful bidder the amount of such commission herewith set forth. This warranty shall not apply to commissions payable by the successful bidder upon the contract secured or made through bona fide established commercial agencies maintained by the successful bidder for the purpose of doing business. `Bona fide established commercial agencies' has been construed to include licensed real estate brokers engaged in the business generally.";
 
 
 4
 that, on or about September 9, 1949, the defendant's bid for the property was accepted, and the property was transferred to it on or about November 1, 1949; that "thereafter" the defendant paid Waechter the $25,000 contingent fee; and that, by reason of its breach of the provision of the contract above quoted, it became liable to the Government for an equivalent amount as liquidated damages, plus interest and costs.
 
 
 5
 The defendant in its answer admitted having offered to acquire and having, on or about November 1, 1949, acquired from the Government the property in suit. The defendant denied liability for damages.
 
 
 6
 The issues were tried to the court. There was little dispute as to the evidentiary facts, and a detailed statement of them is unnecessary. The record shows that because of a contract with the "DuPont Company," it was vitally important for the defendant to secure the property in suit from the Government by November 1, 1949; that in April of 1949 the defendant was informed by a W. R. Smith, of Kansas City, Missouri, who was handling the property for the War Surplus Assets Administration, that a part of the property was occupied by the Organized Reserve, but would shortly be vacated and turned over to the War Assets Administration, and that the asking price would be about $117,000; that the defendant wanted the property, but met with delay in attempting to acquire it; that the contractor who was to reconstruct the buildings on the property when and if acquired by the defendant, suggested to Kenneth C. Baker, the defendant's President, that he ask Lee Schumacher, of St. Louis, who made frequent trips to Washington, D. C., to see if the matter could be expedited; that on or about June 10, 1949, Schumacher informed Baker that he had made inquiry in Washington about the proposed acquisition, and that the property could never be acquired unless James A. Waechter was employed as attorney at a fee of $25,000; that Baker did not know Waechter, but decided to employ him; that a check for $25,000, payable to Waechter, was drawn by the defendant and delivered to Schumacher with instructions to hold it until further directions; that the bid ultimately accepted by the Government, on or about September 9, 1949, was $90,000 for the sale to the defendant of the buildings and improvements on the land, and $27,000 for the sale of the land to Kremer-Hicks Company, of St. Louis, Missouri (under an arrangement with the defendant), making the total purchase price received by the Government, for land and buildings, $117,000; that when Baker, shortly before September 26, 1949, was advised of the acceptance of the defendant's bid, he authorized Schumacher to turn the $25,000 check over to Waechter, which was done on September 26.
 
 
 7
 The findings of fact of the trial court are justified by the evidence. The contention that, under the evidence, Waechter was not employed on a contingent fee basis to "solicit or secure" the contract in suit, but merely to "expedite" the carrying out of a contract, the terms of which were already agreed to, and to "cut through the red tape," is ingenious but unsound. Obviously, Baker agreed to pay Waechter $25,000 if and when the defendant's bid for the property was accepted, because Baker was convinced that in no other way could the contract for the property be secured before November 1, 1949. Whatever the exaction be called, it was, in effect, a fee contingent upon the contract for the sale of the property being forthcoming.
 
 
 8
 The main question for decision is whether the provision of the contract captioned "Covenant Against Contingent Fees" was valid, so that its breach by the defendant entitled the Government to the liquidated damages called for.
 
 
 9
 The defendant asserts that the judgment represents the attempted exaction of an unenforceable penalty entirely disproportionate to any damages suffered by the Government from a breach of the covenant, or to any prospective damages which, at the time the contract was made, could have been anticipated from such a breach, the Government having received its full asking price and having suffered no damages at all. The defendant further contends that the inclusion of this covenant in the contract of sale was unauthorized by law, such covenants being authorized only in contracts where the Government is the purchaser.
 
 
 10
 The circumstances under which a provision fixing in advance the amount of damages payable in the event of its breach will be enforced are stated in Restatement, Contracts § 339. Enforcement will be granted if "(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation." See, also: Priebe & Sons, Inc., v. United States, 332 U.S. 407, 411, 68 S.Ct. 123, 92 L.Ed. 32; Wise v. United States, 249 U.S. 361, 365, 39 S.Ct. 303, 63 L.Ed. 647; United States v. Bethlehem Steel Co., 205 U.S. 105, 120-121, 27 S.Ct. 450, 51 L.Ed. 731; Sun Printing & Publishing Ass'n v. Moore, 183 U.S. 642, 672-674, 22 S.Ct. 240, 46 L.Ed. 366. The rule is easy to state, but difficult to apply, as is well illustrated by Priebe & Sons, Inc. v. United States, supra.
 
 
 11
 It would seem not unjust or unreasonable to measure the harm done to the Government because of the payment of a contingent fee by a bidder for Government property, by the amount of the fee, since one reasonably may believe that the prices obtainable by the Government for property it has for sale are reduced by the amount that bidders pay by way of contingent fees in order to acquire the property. As the District Court said in this case, "If defendant were willing to pay $117,000 for the property plus $25,000 as a contingent fee to obtain the same, then defendant surely would be willing to pay at least $142,000 for the property absent the need to pay $25,000 as a contingent fee."
 
 
 12
 We think it is also true that, in the absence of an agreed amount as damages for the breach of such a covenant as that in suit, it would be very difficult to estimate damages with any degree of accuracy. We think that the District Court reached a permissible conclusion in determining that the Government was entitled to judgment for $25,000 principal amount as liquidated damages for breach of the covenant against contingent fees.
 
 
 13
 In saying that, we have not overlooked the defendant's contention that there was no specific legal authorization for such a provision in a contract by the Government to sell property. The District Court ruled to the contrary, and we have no reason to question its conclusion. However, there was certainly no statute prohibiting the inclusion of such a provision in such a contract. Logically, we think, the provision was as appropriate in a Government sales contract as in a Government purchase contract, and just as desirable. The Supreme Court, in Rex Trailer Co., Inc., v. United States, 350 U.S. 148, 151, 76 S.Ct. 219, 221, 100 L.Ed. 149, said:
 
 
 14
 "* * * The Government has the right to make contracts and hold and dispose of property, and, for the protection of its property rights, it may resort to the same remedies as a private person. * * * Liquidated-damage provisions, when reasonable, are not to be regarded as penalties, United States v. United Engineering & Contracting Co., 234 U.S. 236, 241, 34 S.Ct. 843, 845, 58 L.Ed. 1294, and are therefore civil in nature."
 
 
 15
 See, also, Priebe & Sons, Inc., v. United States, supra, at page 411 of 332 U.S., at page 125 of 68 S.Ct., and cases cited.
 
 
 16
 The Government in its cross-appeal asserts that it was entitled to prejudgment interest as a matter of right, since the amount of damages due it from the defendant was liquidated as of the time the covenant against contingent fees was breached in 1949, — so that for more than eight years the defendant has had the use of $25,000 which it should have paid to the Government for its use. The Government asks that, on remand of this case, we direct the District Court to award interest at a reasonable rate from the date of the defendant's breach of the covenant.
 
 
 17
 The reluctance of the District Court to add interest to the liquidated damages in this long-pending litigation is understandable. The action was commenced December 12, 1952. It was tried August 17, 1955. Judgment was entered June 19, 1957. It appears from the docket entries of the Clerk of the District Court that the delay which occurred between the date of the commencement of the action and the time of trial was due to no fault of the Government. The defendant did not file its answer until January 27, 1955. Assuming, without deciding, that the lapse of time between the filing of the complaint and the entry of judgment, if due to delay on the part of the Government, could properly be considered in determining whether interest should be allowed, we find nothing in the record legally to justify the refusal to allow prejudgment interest on the amount of liquidated damages which became due and owing to the Government as of the time of the breach of the covenant. As was said by the Supreme Court in Royal Indemnity Co. v. United States, 313 U.S. 289, 296, 61 S.Ct. 995, 998, 85 L.Ed. 1361: "Here responsibility for delay in payment rests quite as much upon the debtor, who is chargeable with knowledge of its own obligation and the breach of it, as upon the creditor. And in the meantime the debtor has had the use of the money, of which its default has deprived the creditor. Interest upon the principal sum from the date of default, at a fair rate, is therefore an appropriate measure of damage for the delay in payment." See, also, United States v. Employers Mutual Casualty Co., 8 Cir., 226 F.2d 895, 898-899.
 
 
 18
 Our conclusion is that the judgment appealed from should be modified by adding to the principal sum interest at a fair rate from the date of the breach of the covenant against contingent fees, the rate of interest to be fixed by the District Court. As and when so modified, the judgment shall stand affirmed.