**E. F. HIGGINS, INC., a corporation, Plaintiff-Appellant,**

v.

**R. L. POHLMAN CO., a corporation, et al., Defendants-Respondents.**

**No. 56649.**

Supreme Court of Missouri, Division No. 1.

March 12, 1973.

Husch, Eppenberger, Donohue, Elson & Cornfeld, Donald W. Bird, Kent W. Faerber, St. Louis, for plaintiff-appellant.

Leyhe, Jacobsmeyer & Meyer, R. W. Jacobsmeyer, Alan J. Baker, Clayton, for defendants-respondents.

LAURANCE M. HYDE, Special Commissioner.

Action for $63,750 for commission for services claimed to have been performed by plaintiff in connection with sale of ammunition fuses to the United States Government. The trial court entered judgment for defendants and plaintiff has appealed. We have jurisdiction because of the amount involved, the notice of appeal having been filed in this court March 4, 1971. We affirm.

The case was tried by the court without a jury. Plaintiff's petition was in two counts, One for 5% commission and Two for reasonable value of services, each for the same amount. Plaintiff's business was acting as a manufacturer's agent for others for both civilian and government procurement and was compensated by commission, the standard rate shown to be 5%. De-

fendant Pohlman was president of two companies which had separate adjoining production facilities. The armament company manufactured primarily for government procurement. It was incorporated in December 1965. Before then in 1963 the Pohlman Co. had a United States Government contract to manufacture 20 millimeter dummy projectors. On January 4, 1966, the Pohlman Co. received a contract to manufacture 20 millimeter target practice tracers. The contract for which plaintiff claims commission was awarded to the Pohlman Armament Company on February 25, 1966. United States Government procurement is generally initiated by a solicitation to private industry for offers to provide the services or articles required. This solicitation may take one of two forms, but in either case, it consists of a kit containing all of the forms, schedules, classifications, drawings and contract terms necessary for the submission of a response (bid) to this solicitation. Although such bidding kits are available from the procuring agency, hundreds of such solicitations are issued daily from numerous procurement offices throughout the country, and the existence of a particular procurement and solicitation kit therefor is ordinarily ascertained only by following the Commerce Business Daily, or by keeping in contact with an agency that might be engaging in such procurement. The Pohlman companies were subscribers to the Commerce Business Daily. Between 1963 and 1966 the Pohlman Company did much munitions subcontract work for Olin Mathieson, Universal Match (Unidynamics) and Bendix.

Plaintiff claims compensation for informing defendant about a proposed government contract for manufacture of a six-part fuse assembly for 20 millimeter shells, which it claimed was solicitation 657. Pohlman claims he had been working on a bid for a contract on solicitation 657 in December 1965, during the Christmas holidays, before plaintiff's officers came to see him; and that in January 1966 they came to see him about solicitation 745. It

appears that solicitation 657 was issued December 22, 1965. Pohlman also claims he bid on solicitation 745 but did not get a contract. The decisive issues in this case are fact issues mainly depending on accuracy and credibility of the testimony. The only witnesses were Mr. Higgins, his employee Mr. Schaaf and defendant R. L. Pohlman, Jr.

Plaintiff's evidence was that its representatives Higgins and Schaaf went to see Pohlman in January 1966, identified themselves as manufacturers' agents and gave him a bid kit which they said was for solicitation No. 657. They said Pohlman agreed to pay a commission of 5% if his company was the successful bidder. Pohlman denied that any fee agreement was made and said that all parties realized it was illegal to have a contingent fee on a government contract. Pohlman met Higgins on several occasions after their first meeting but said the purpose of these meetings was to get Higgins to help him in getting made one of the component parts (a rotor ball) which Pohlman had trouble making with his equipment. This was said to be about one third of the total cost of the project. Pohlman said Higgins did not find any help for him on this. Pohlman said he had never seen a kit as complete as the one Higgins brought him. However, Pohlman claims this kit was for solicitation 745 and said he had received a bid packet on solicitation 657 about Christmas 1965 and submitted a bid on it on January 10, 1966 which he said was before Higgins came to see him. Pohlman's contract was on solicitation 657 awarded February 25, 1966. Higgins and Schaaf were not definite about the date they first contacted Pohlman but testified it was the first week in January 1966. Their original petition alleged "on or about the first day of February 1966," which would have been after the date Pohlman submitted his bid on solicitation 657, which was January 10, 1966. Pohlman's testimony was that Higgins came to him as a representative of the Monroe City Die Casting Company, in

which Higgins was a stockholder and from which Higgins got the kit because it could not make the unit. Before he saw Pohlman Higgins had also discussed the solicitation with another company which was not interested in it.

The court made comprehensive findings of fact and conclusions of law. On the main fact issues the court found as follows: "[T]hat neither defendant Pohlman nor anyone else in behalf of either corporate defendant agreed to pay any commission to plaintiff on the contract discussed or on any of the government contracts in evidence. * * * Neither Mr. Higgins nor any other agent or employee of the plaintiff performed any other services for defendant in relation to bidding on or obtaining the munitions fuse contract * * * Higgins did discuss with defendant Pohlman the possibility of Higgins working out a cheaper way to produce a rotor part for use in the fuse, and defendant Pohlman said he would compensate Higgins for that, but Higgins did not succeed in his effort to produce the rotor more cheaply. * * * Defendant Armament Company had submitted a proposal (Defendants' Exhibit B) on Request No. 36038–66–657 (M L N) on January 10, 1966, and was awarded a contract on this proposal. The proposal represented by Exhibit B had been received by defendant Armament Company and most or all of its preparation of the proposal had been completed before the first meeting between Higgins and defendant Pohlman. Defendants were not awarded the contract on proposal A M C (A) 36038–66–745 (M L N) (defendants' Exhibit H), which was the proposal discussed with Higgins." On the basis of these findings the court entered judgment for defendants on both counts of its petition.

Plaintiff recognizes our review is under Rule 73.01(d), V.A.M.R., which provides: "The question of the sufficiency of the evidence to support the judgment may be raised whether or not the question was raised in the trial court. The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The decisive fact issues are whether there was an agreement between Pohlman and Higgins for a commission and whether the kit Higgins gave Pohlman was for proposal 657 on which Pohlman was awarded a contract. These issues depended mainly on the oral testimony of Higgins and Pohlman. Plaintiff contends the court's findings on these issues were clearly erroneous. Plaintiff relies mainly on answers made by Pohlman in his pretrial deposition. Plaintiff says: "At the very least, Mr. Pohlman's testimony indicates a 'faulty' memory that cannot be relied upon to ascertain whether or not an agreement was, in fact, made." Plaintiff relying on answers made by Pohlman in his deposition claims "the overwhelming preponderance of the evidence is contrary to the finding" of the trial judge. Plaintiff cites Schmitt v. Pierce, 344 S.W.2d 120, 122 (Mo. banc 1961) in which we said: "We recognize that the court's finding is not binding on us; that the question is not merely whether the court's findings are supported by substantial evidence; and that we are to make our independent investigation and reach our own conclusions as to the weight of the evidence. * * * Where, however, there is irreconcilable conflict in the evidence on essential fact issues the admonition in § 510.310, subd. 4 [Civil Rule 73.01(d)], to give due deference to the opportunity of the trial court to judge the credibility of the witnesses and not set aside the judgment unless clearly erroneous is appropriate." In Crosswhite v. State, 426 S.W.2d 67, 70 (Mo.1968) we approved the following statement: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

Plaintiff argues the credibility of Pohlman's testimony at the trial as being in conflict with statements in his deposition concerning the identity of the bid kit left with him by Higgins and the claimed agreement to pay 5% commission. However, Pohlman never definitely said in his deposition that the kit Higgins left with him was for the contract he obtained from the government. Plaintiff assumes that some of Pohlman's testimony meant it was. Likewise Pohlman never said in his deposition that he agreed to pay a commission although he said he considered Higgins was looking for some compensation. Pohlman said Higgins and Schaaf introduced themselves as sales representatives from Monroe City Die Casting Company of Monroe City, Missouri. Higgins was a stockholder in that company. It appears that on a prior occasion Monroe City Die Casting Company had a business relationship with Pohlman in which Higgins was interested. Pohlman said that Higgins mentioned that it was illegal to pay a fee on government contracts, and that Higgins suggested the possibility of obtaining some type of fee by some other method. Higgins said that Pohlman told him he was going to certify to the government that he was not paying a commission and that he told Pohlman he should not do that. Thus it appears both knew about government restrictions on contingent commissions. Pohlman said he was willing to pay Higgins for producing one of the components of the fuse but that did not work out.

■ Pohlman at the trial explained that in his statements in his deposition and interrogatories about the kit Higgins brought him he was not referring to the one on which he received a contract and on which he had made a previous bid. While he said the kit Higgins brought him was the most complete kit he had seen, he said he did not get a contract on it. Pohlman claimed the kit on which he got a contract had been sent to him by the Frankford Arsenal. The trial court accepted this explanation and on our review of the whole

record we cannot hold the trial court was wrong in its findings of fact. Considering this and all the evidence in this case, it is our view that the trial court's findings on the fact issues it specified are not clearly erroneous and should be accepted as correct by this court. This applies both to the plaintiff's claim of an express contract for a fee and its claim on quantum meruit for services furnished.

■ In addition to its fact findings, the trial court in its conclusions of law ruled: "The alleged contract for payment of a commission, and the payment of any commission relative to the subject matter of plaintiff's Petition, would violate the federal law and regulations. Plaintiff does not come within any of the exceptions established by the federal government. It would be against Public Policy to permit plaintiff to recover under either Count I or Count II of its Petition." Plaintiff cites Ebeling v. Fred J. Swaine Mfg. Co., 357 Mo. 549, 209 S.W.2d 892, 895 (1948), holding a World War II Executive Order "did not prohibit the employment of agents to procure war contracts on a percentage commission basis" but "provided * * * a warranty that the contractor would not employ other than a bona fide, established commercial or selling agency to obtain the contracts." It was also noted that the order did not say the contract should be void if the warranty were violated but "merely reserved to the Government the option to annul the contract, or to deduct the commission of the spurious agent." This matter later covered by statute (41 U.S.C.A. § 254; see also 10 U.S.C.A. § 2306[b]) was considered in Weitzel v. Brown-Neil Corporation, 152 F.Supp. 540, 546 (N.D.W.Va. 1957), in which the Ebeling case and other state cases were noted but the court following decisions of United States Courts of Appeals reached a different result denying compensation holding no valid enforceable implied contract existed under similar circumstances. See Mitchell v. Flintkote Co., 185 F.2d 1008 (2nd Cir. 1951); see also J. D. Streett & Co. v. United States,

256 F.2d 557 (8th Cir. 1958), in which the United States was allowed to recover $25,000 contingent commission paid by a successful bidder and also interest from the date of the breach of the covenant against contingent fees. Since the United States can recover from a successful bidder contingent commissions paid by him to an agent, our courts should not require a contingent commission to be paid to an agent.

The basis of our decision makes it unnecessary to consider the issue of whether the fact that plaintiff's corporate charter had been forfeited before the claimed transaction with defendant barred the relief sought.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.