**COLDWELL BANKERS–GORDON COMPANY REALTORS,**
Respondent/Appellant,

v.

**Raymond R. ROLING and Lorraine M. Roling, Appellants/Respondents.**

No. WD 36880.

Missouri Court of Appeals,
Western District.

Jan. 14, 1986.

R.L. Veit and Paul T. Graham (Carson, Monaco, Coil, Riley & McMillin, Jefferson City, of counsel), for respondent/appellant.

James W. Gallaher (Bushmann, Neff, Gallaher & Brown, Jefferson City, of counsel), for appellants/respondents.

Before SOMERVILLE, P.J., and PRITCHARD and BERREY, JJ.

PRITCHARD, Judge.

This is an action brought by Coldwell Bankers-Gordon Company, plaintiff, against the defendants, Roling, for real estate commissions occasioned by the lease of defendants' building at 1735 Southwest Boulevard in Jefferson City, Missouri, to GMAC.

On May 31, or June 1, 1982, GMAC contacted plaintiff to enlist its services in leasing office space in Jefferson City. Plaintiff knew of defendants' building and telephoned Roling on about the same dates to see if he was interested in a lease. Roling expressed interest and he and plaintiff with GMAC's representatives viewed the property also about the same dates. On June 1, 1982, plaintiff prepared a document (Exhibit 1) entitled "Commission Agreement and Articles for Proposed Lease Agreement" which Ray Roling signed. It recited, "This agreement by and between Ray Roling, lessor and General Motors Acceptance Corporation, by M.E. Pope and T.A. Soley, is recognized to be a preliminary agreement in rough draft form with specific manner when fully negotiated in a final lease agreement to be drawn by counsil (sic). Whereas, Coldwell Banker Gordon Company Realtors, through their agents, Vera Eveler and Donna Schrimpf, have produced a client anxious and qualified to lease said premises. Therefore, the undersigned,

owner of said premises, promise to pay to Coldwell Banker Gordon Company Realtors, as commission for procuring a leasee (sic), 10% of the gross annual rents for the initial lease term. In addition, the undersigned promise to pay 10% of the gross annual rents for any options should they be exercised. Commission on gross annual rents for the initial lease term is due and payable in full at the time of execution of said lease. In the event that no lease is consummated with the above named corporation, it is hereby understood that no commission is due."

Count I of plaintiff's petition sought recovery of a 10% commission of the initial five year rentals in the amount. of $12,-800.00, interest thereon from August 2, 1982, and reasonable attorney's fees. The prayer for attorney fees was stricken by the court upon motion, and plaintiff cross-appeals on that issue.

It was stipulated by the parties that plaintiff was a licensed real estate broker; that Raymond Roling was authorized to act on behalf of Lorraine Roling and Roling Investment Company, Incorporated; and Ray Roling and his wife are the owners of the property and are responsible for any commission arising out of the lease of August 2, 1982, between Roling Investment Company and GMAC if any commission is due and owing. Plaintiff sued defendants as the "alter-ego" of the corporation, and no question is presented as to proper parties.

In opening statement, defendants' counsel admitted these matters: "Now, we will admit, and the evidence from Mr. Roling will state, that he knew, after he made the phone call and the Gordons said, 'We've got a person that wants to lease your building', he knew he was going to have to pay a commission, some sort of finder's fee, as Mr. Roling will testify to. He never expected Gordon Company to work for free. They are in the real estate business, and they deserve to make a living."

Ray Roling admitted in his testimony that he had signed the lease with GMAC; that he had signed the commission form (Exhibit 1); that he had agreed to pay 10% commission on the initial lease period, and the optional terms (although the options to renew were not known when he signed Exhibit 1); and that he owed plaintiff $12,-800.00 on the initial term of the lease.

The lease (Exhibit 3) is dated August 2, 1982, and was executed by GMAC on September 10, 1982, and by defendants on August 27, 1982. It provided for an initial five-year term at a yearly rent of $25,-760.00; and for two successive five year extensions at GMAC's option, with rentals for the first renewal term at $32,200.00 per year, and for the second renewal term of $40,259.00.

At the close of plaintiff's evidence, the trial court directed a verdict for it on Count I for $12,800.00, and entered judgment for that amount plus interest in the amount of $2,645.94. Count II of the petition was for a declaratory judgment that defendants were liable for future commissions on the two renewal terms of the lease, if those options were exercised. The parties had stipulated that they would be bound by the findings on Count I, and the court entered judgment for possible future commissions on Count II. Other issues were found to be moot because of the findings on Counts I and II.

▮ In Point I, defendants say that the June 1, 1982, agreement signed by Ray Roling was not supported by consideration contending that plaintiff had already produced a client (GMAC) before that date and that any consideration was past. There was testimony from Gordon that in the initial telephone conversation, Roling was informed that the commission would be 10% of the gross lease. This conversation was overheard by Donna Schrimpf, who was on another line. There was nothing then mentioned, according to the record, of the two optional renewal periods, and the building had not been then shown to GMAC. That was done on May 31 or June 1, 1982. Clearly, under the facts, much had to be done to negotiate the lease at the time of the initial conversation: The options to renew had not been discussed; the

amount of annual rentals had not been fixed; the lease had not been prepared; indeed, GMAC had not then indicated it would in fact lease the building; and improvements or alterations had not been agreed to or made by Rolings (he testified he spent some $35,000 to improve the premises, some of which were reimbursed by GMAC). Plaintiff had to be active in consummating the lease after June 1, 1982, so there was no past consideration. Besides, the writing of June 1, 1982 (Exhibit 1) must be deemed to be a memorializing of the prior oral conversation of the parties, with the additional matter of commissions on renewal options added. The oral conversation merely merged into the writing of June 1, 1982. Compare *Louis v. Andrea*, 338 S.W.2d 96, 102[5, 6] (Mo.1960); *Edwards v. Sittner*, 213 S.W.2d 652, 656[6, 7] (Mo.App.1948), and cases cited. The Edwards case held that unless the written part of a contract is incomplete, prior and contemporaneous oral agreements are merged therein. Here, the writing of June 1, 1982 (Exhibit 1) is sufficiently complete so as to constitute the whole agreement, with definite designation of acts to be done thereunder, until the lease was fully negotiated, and if not negotiated, defendants would owe no commission whatever. Under this concept, the lease agreement was fully consummated, with full consideration being payable to plaintiff, as finally earned, and Point I is overruled.

Point II contends that the trial court erred in directing a verdict for plaintiff on the written agreement because it fails to comply with the Rules and Regulations of the Missouri Real Estate Commission in that (A) it did not contain all of the terms under which the property was to be sold [leased], including the price, the commission to be paid, a definite expiration date, and the signatures of all parties concerned as required by 4 C.S.R. 250–8.090(2); and (B) the broker's service upon which the contract is based was performed without having a written listing agreement in effect in violation of 4 C.S.R. 250–8.090(1).

It is argued that the Rules and Regulations establish the public policy of the state respecting the relationship of brokers to their customers; that plaintiff's contract violated that public policy and courts will refuse to enforce it. Without much doubt, plaintiff did not comply with 4 C.S.R. 250–8.090(2) by having an explicit listing agreement, and it did contact GMAC without such listing on behalf of defendants. It thus technically violated the public policy established by the regulations. But, nonetheless, these violations must be measured by the peculiar facts of this case. There is no evidence that defendants, especially Mr. Roling, were in any way misled, overreached or prejudiced by plaintiff's failure to comply with the Real Estate Commission's rules and regulations, or that there was a misunderstanding. Rather, the evidence is that defendants benefitted by plaintiff's services—they got an advantageous lease at rentals above what they had before, with options to renew (if exercised by GMAC). Certainly, defendants have a solvent lessee. On the other hand, if plaintiff is denied a commission, defendants will have received their services for producing a lessee ready, able and willing to consummate the deal, for nothing, a windfall to defendants, with a definite financial detriment to plaintiff. On these facts, the case of *Ebeling v. Fred J. Swaine Mfg. Co.*, 357 Mo. 549, 209 S.W.2d 892 (1948), is in point and determinative. There, the plaintiff sued for commissions, and for an accounting to arrive at the amount of commissions due, for procuring certain Government contracts. It was contended that an Executive Order issued under a Federal War Powers Act, which required every contract contain a warranty that it had not been solicited or secured for a commission by any person other than a bona fide established commercial or selling agency maintained by the contractor for the purpose of obtaining business, and that on breach of the warranty the Government should have the right to annul the contract, or deduct the wrongful commission. Plaintiff was not a selling agency, and his contract with defendant to procure subcon-

tracts for it with Emerson Electric Company was oral. It was contended that the lack of the warranty provision, and that plaintiff was not a selling agent, made the commission contract void and illegal. There was no showing that the Government exercised its options, and the court noted that the Executive Order did not prohibit the employment of agents to procure war contracts on a commission basis, and also at page 896[9] cited cases upholding similar contracts to speed war production even though they might otherwise be illegal. But the important part of the *Ebeling* case is 209 S.W.2d at page 895[6]: "However, this [cited cases holding that statutes wholly forbade the doing of the acts at all] is not the law in all circumstances. Sometimes courts will inquire how far and for what reason a transaction is prohibited as wrongful; and whether the loss to the party in delicto will exceed requirements of public policy. 6 Williston on Contracts (Rev.Ed.) p. 5006, § 1784; p. 5085–6, § 1789. See also *Shulkin v. Shulkin,* 301 Mass. 184, 16 N.E.2d 644, 118 A.L.R. 629, 640, note." [Brackets added.] Note also the discussion of exceptions to the general rule in *Twiehaus v. Rosner,* 362 Mo. 949, 245 S.W.2d 107, 114–115 (1952).

There is nothing in the statutes or the Missouri Real Estate Commission Regulations that make a transaction void and illegal for failure to comply with 4 C.S.R. 250–8.090(1) and (2) by a licensed broker as here contended. The statutes (chapter 339, RSMo 1978) were enacted for the purpose of protecting the public from fraud and incompetence. *Mueller v. Ruddy,* 617 S.W.2d 466 (Mo.App.1981). Note that § 339.040, RSMo 1978, as amended, requires a broker or salesperson to take and successfully complete an examination prior to being issued a license. The only matter declared to be void and unenforceable is a commission agreement where the agent does not possess a real estate license. *Sandbothe v. Williams,* 552 S.W.2d 251, 254[3–5] (Mo.App.1977). In this case there is a further memorializing of the provisions to be included in the proposed lease in Exhibit 2, signed by Ray Roling on June

15, 1982, as to the commencement of the initial lease period (4 weeks after the current tenant vacates the premises); a provision for two renewal options, with all rentals specified; lessor's responsibility for payment of taxes and insurance, and major structural and appliance maintenance; and the time for a formal lease execution is not to exceed 60 days from June 15, 1982. This further document shows a substantial compliance with 4 C.S.R. 250–8.090.

Under the particular facts of this case, there being no evidence of fraud or misconduct, and balancing the loss to plaintiff against the purpose of the statutes and regulations as to real estate brokers in the declared public policy to prevent fraud and incompetence, it should not be held that plaintiff should forfeit its earned commission by reason of the technical *initial* failure to have an adequate listing agreement. Point II is overruled.

■ As to plaintiff's cross-appeal from the order denying its prayer for attorney fees by striking it, defendants say that Count II did not state a cause of action for declaratory judgment, and thus attorney fees are not recoverable as "costs" under § 527.100, RSMo 1978. That defense is raised for the first time on this appeal, which is permissible. *Casper v. Lee,* 362 Mo. 927, 245 S.W.2d 132 (1952); *Oberkramer v. City of Ellisville,* 650 S.W.2d 286 (Mo.App.1983). It is said further that there was an adequate remedy at law, suit for breach of contract, and thus the "equitable" remedy of declaratory judgment does not lie. The trouble with defendants' position is that even though the action may be based upon a contract, it was stipulated that judgment on Count II be entered in accordance with the court's finding on Count I, which was against defendants and which is affirmed, supra. Plaintiff contends that under § 527.100, attorney fees are awardable in a declaratory judgment action, which is true in a proper case. E.g., *Bernheimer v. First National Bank of Kansas City,* 359 Mo. 1119, 225 S.W.2d 745, 755 (1949). Although declaratory judgment was available to settle

the uncertainty of defendants' future liability for commissions if options to renew the lease were exercised, the basic liability was in contract, ordinarily an action at law. Here there is no statutory provision for attorney fees in 'this kind of contract action, and there was no agreement therefor. The trial court did not err in denying plaintiff attorney fees.

The judgment for plaintiff against defendants on Counts I and II is affirmed. The order denying plaintiff attorney fees is affirmed.

All concur.