Kathleen O'CONNER,
Plaintiff–Respondent,

v.

Burton E. FOLLMAN and Follman Properties Company,
Defendants–Appellants.

No. 52119.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 19, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Feb. 24, 1988.

Application to Transfer to Denied
April 19, 1988.

Harry B. Wilson, St. Louis, for defendants-appellants.

Donald Schlapprizzi, St. Louis, for plaintiff-respondent.

KELLY, Judge.

Respondent Kathleen O'Conner filed a three count petition against appellants Burton Follman (Follman) and Follman Properties Company to recover real estate commissions she earned while employed by them as a sales and leasing associate during their leasing of St. Louis Place, a newly-constructed commercial building in downtown St. Louis. Summary judgment was granted in favor of appellants on two counts of the third amended petition—the quantum meruit and contract claims. The jury returned a verdict in O'Conner's favor on the remaining count sounding in fraud. Pursuant to the jury's award, the trial court rendered its judgment giving O'Conner $82,881.03 in actual damages and $65,000 in punitive damages against Follman and $15,000 in punitive damages against Follman Properties Company. We reverse.

At the outset, we first address a motion taken with the case. O'Conner has moved that certain portions of appellants' legal file be stricken. She objects to appellants' inclusion of two motions for summary judgment and the order ruling on these motions because they relate to issues not

presented during the course of the trial of this action.

These items reflect the disposition on two of the three counts of O'Conner's third amended petition. While the motions may be superfluous for our consideration, the order is critical. Without it, we would otherwise be unable to treat the judgment appealed from as a final disposition of all parties and of all claims raised by O'Conner in her lawsuit against appellants. We deny O'Conner's motion.

The three points raised on appeal contend the trial court erred in the following respects: 1) in failing to direct a verdict for appellants because, absent proof of legally collectible damages or of all essential elements of fraud concerning any single representation, O'Conner did not make a submissible case; 2) in giving an instruction which submitted conjunctive theories of recovery, failed to distinguish the representations constituting fraud, and failed to define a technical term; and 3) in denying a new trial where O'Conner's evidence did not support the damages awarded her by the jury.

■ An action for fraud consists of numerous elements. The elements of fraud are: 1) a representation, 2) its falsity, 3) its materiality, 4) the speaker's knowledge of its falsity or his ignorance of its truth, 5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated, 6) the hearer's ignorance of the falsity of the representation, 7) the hearer's reliance on the representation being true, 8) his right to rely thereon, and 9) the hearer's consequent and proximately caused injury. *Sofka v. Thal*, 662 S.W.2d 502, 506 [2] (Mo. banc 1983); *Brown v. Jones*, 735 S.W.2d 155, 158 [8] (Mo.App.1987). Failure to establish any one of the essential elements is fatal to recovery. *Springdale Gardens, Inc. v. Countryland Development, Inc.*, 638 S.W. 2d 813, 815 [2] (Mo.App.1982).

Appellants' first point states that O'Conner failed to make a submissible case because her evidence failed to establish her right to legally collectible damages, the ninth requisite element. We agree.

We are obliged to take O'Conner's evidence as true, to give O'Conner the benefit of all reasonable inferences, and to disregard testimony adduced by appellants (as defendants) except insofar as it aids O'Conner's case. *Crabb v. Mid–American Dairymen, Inc.*, 735 S.W.2d 714, 720 (Mo. banc 1987).

In light of the foregoing, the record disclosed the following evidence. In May 1981 O'Conner met with a vice-president of Follman Properties Company, a corporation engaged in commercial real estate business and property management, to discuss employment opportunities with Follman Properties. Burton Follman, president of Follman Properties, ultimately hired her, despite her lack of experience in real estate, as a sales and leasing associate to assist in the leasing of St. Louis Place. He told O'Conner that she did not need a real estate sales or broker's license to do commercial leasing of St. Louis Place because she was working for the owners of the development. While Follman Properties had the exclusive listing contract as the leasing agent for St. Louis Place, Follman Properties Company had no ownership interest in St. Louis Place, although Burton Follman individually owned a certain percentage in a limited partnership which did have an ownership interest in St. Louis Place.

Follman originally offered to pay O'Conner a base salary of $22,000.00 plus a commission of twenty-five cents ($0.25) per square foot of space rented to tenants whom she brought into the building. Under this arrangement, if O'Conner obtained tenants for one-half of the building, she would earn additional compensation amounting to about $37,000.00. O'Conner also stated her base salary was to increase from $22,000.00 to $24,000.00 at some unspecified time while Follman remembered telling her he would review her for an increase to $23,000.00 in 120 days. O'Conner testified that she was seriously considering another employment opportunity which she had tentatively accepted. At a final meeting before she decided on the position with Follman Properties, Follman extended a counter offer to her.

This compensation package offered her a base salary of $22,000.00 plus the twenty-five cent commission but her commission was to increase on December 31, 1981, to a forty-five percent division of the total lease commission earned for any client she uncovered, developed or which Follman assigned to her to handle to completion. Under this proposal, while her commission would increase, her base salary would eventually be reduced to $15,000.00.

Thus, if O'Conner were responsible for leasing half the building, her commissions would exceed $300,000.00 compared with the original $37,000.00 offer. Respondent accepted the later proposal and began working for Follman Properties Company as a sales and leasing agent for St. Louis Place on June 2, 1981. Follman denied having offered to split the total commission earned on each lease with O'Conner taking forty-five percent of the commission, and Follman, the remaining fifty-five percent.

After being hired, O'Conner embarked on securing tenants. She met prospective clients, including Arch Mineral, Peabody Coal, Sayre and Toso, IBM, and Eagle Marine. The nature of her client contacts are not germane to the dispositive issue on appeal and need not be detailed. Each of these companies eventually signed leases and became tenants of St. Louis Place, all subsequent to O'Conner's termination in late March 1982 from Follman Properties Company.

Prior to hiring O'Conner in June, Follman had also hired Steven Wood in April 1981 as a sales leasing associate for other projects. He understood, when hired, that he would need to obtain a real estate license for his job. However, he missed the April exam's deadline and failed the June examination. In August, he passed the exam. In the interim, he continued to do sales and leasing work for Follman Properties. The delay in Wood's obtaining his real estate license strained the employment relationship and Wood's employment with Follman Properties ended that August.

When he left, Wood filed a complaint with the Missouri Real Estate Commission alleging that Follman Properties used unlicensed real estate persons, that is, himself. An investigator spoke with Follman in October 1981 about the charge. The charges were eventually resolved May 19, 1982, with an agreement stipulating the following: Follman did not admit that he violated Missouri law regarding the use of unlicensed personnel; Follman and Follman Properties would not contest the one year probation period to be imposed by the Missouri Real Estate Commission beginning May 19, 1982; and the Commission would take no further action against Follman and Follman Properties for violations relating to the employment of unlicensed personnel prior to May 19, 1982, whether or not previously disclosed to the Commission by Follman.

During the investigation, Follman discovered in November 1981 that a 1978 amendment to § 339.010.3 RSMo (now 1986) required that O'Conner also have a license in order to lease St. Louis Place. O'Conner, who had taken the real estate exam in June 1981 but had failed, took the exam again in December, passing the state portion but failing the uniform part. She took the uniform part again in January and February 1982, with no success. While studying for the exam, she twice took real estate courses. The second offering of the real estate classes was either in December 1981 or February 1982. A lecture raised a question in her mind whether she needed a license. She testified at trial Follman reassured her that, since she was working for the owner of the building, she did not need a license. Follman's attorney echoed this position. Thus, her evidence indicated Follman permitted her, although unlicensed, to continue her leasing efforts after he had been apprised that a license was required.

On Friday, March 26, 1982, Follman advised O'Conner that he might terminate her employment since she had failed the February test. Unknown to Follman, O'Conner was planning to take the real estate test again, the next day, which she did. On March 29, the following Monday, Follman spoke with O'Conner and informed her not to return to the office until she passed the

exam and gave her a week's leave of absence. On Friday of the same week, he informed her he was uncomfortable with their relationship and wanted to end it. Her personnel file reflected a notation dated March 29, 1987, in which "leave of absence" had been scratched out and substituted with "terminated". The next Monday, April 5, 1982, upon learning she had passed the March exam, O'Conner went directly to Follman's office but did not speak with him that day. He telephoned her later in the week, advising her the termination was final. Follman did not pay her the commissions she demanded which she claimed he owed her. No contention is made that she did not receive her base salary as agreed to.

O'Conner's lawsuit claimed as damages her entitlement to commissions equalling forty-five percent of the five percent commission Follman Properties Company received upon the occupancy by Arch Mineral, Peabody Coal, Sayre and Toso, IBM, and Eagle Marine as tenants of St. Louis Place. The evidence showed that the commissions she claimed she was owed were $43,773.69 from Arch Mineral, $24,667.59 from Peabody Coal; $5,789.74 from IBM; $5,879.41 from Sayre–Toso; and $2,770.60 from Eagle Marine; totaling $82,881.03. The jury returned a verdict for O'Conner of $82,881.03, an amount representing one hundred percent of the actual damages claimed.

■ Appellants' argue that these facts, taken in a light most favorable to O'Conner, required the trial court to direct a verdict in their favor. Appellants observe that the only actual damages either pleaded or proved by respondent were the lost commissions. Noting that an unlicensed real estate agent may not recover commissions on any theory under Missouri law, appellants emphasize O'Conner failed to establish she could legally collect such commissions. Appellants conclude that the failure to establish legally collectible damages defeats respondent's claim against them. We agree.

■ The method for arriving at damages in cases of fraud and deceit is the "benefit of the bargain" rule. *Auffenberg v. Hafley*, 457 S.W.2d 929, 937 [24] (Mo. App.1970). This rule allows the defrauded party to be awarded the difference between the actual value of the property at the time of making the contract and the value that it would have possessed if the representation had been true. *Cotner v. Blinne*, 623 S.W. 2d 615, 619 [7] (Mo.App.1981). In addition to general damages, a defrauded party may also recover special damages which have proximately resulted from the fraud. *Salmon v. Brookshire*, 301 S.W.2d 48, 56 (Mo.App.1957). Finally, we recognize the rule that actual or nominal damages must be recovered before punitive damages can be awarded. *Coonis v. Rogers*, 429 S.W.2d 709, 716 [16] (Mo.1968); *Chambers v. McNair*, 692 S.W.2d 320, 325 [5] (Mo.App. 1985).

O'Conner has tried to obtain these commissions by couching her action in fraud. She argues that the statutory prohibition against recovery of commissions by an unlicensed agent does not bar her fraud claim. However, other than her punitive damage claim, the only actual damages pleaded and subsequently proven by O'Conner were the commissions that she claimed were rightfully hers. Section 339.150 RSMo 1986 captioned "No fee paid to unlicensed persons" provides:

No real estate broker shall pay *any part of a fee, commission or other compensation received by the broker* to any person for any service rendered by such person to the broker in buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate, *unless such a person is a licensed real estate salesman* regularly associated with such broker, or a licensed real estate broker, or a person regularly engaged in the real estate brokerage business outside of the state of Missouri. (emphasis ours)

Section 339.160 RSMo 1986 captioned "Certain legal actions denied unlicensed persons" provides:

No person, copartnership, corporation or association engaged within this state in the business or acting in the capacity of a real estate broker or real estate sales-

man shall bring or maintain *an action* in any court in this state *for* the *recovery of compensation* for services rendered in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate *without* alleging and *proving that such person,* copartnership, corporation, or association *was a licensed real estate broker* or salesman *at the time when the alleged cause of action arose.* (emphasis ours).

Section 339.170 RSMo 1986, captioned "Penalty for violation" specifies that violation of any provision of chapter 339 is a class B misdemeanor punishable by a prison term not to exceed six months under § 558.011.1(6) RSMo 1986 or a fine not to exceed $500.00 under § 560.016.1(2). Section 339.170 RSMo 1986 further provides: "This law shall not be construed to release any person from civil liability or criminal prosecution under the general laws of this state."

■ The evident intention of the legislature in passing the Real Estate Agents and Brokers Law was to protect the public against fraud and incompetency in real estate transactions. *Gilbert v. Edwards,* 276 S.W.2d 611, 616 [5] (Mo.App.1955). Section 339.150 in unambiguous language prohibits a broker from splitting his "fee, commission or other compensation received" with any person not a licensed real estate salesman. *Id.* O'Conner acknowledged that she was not licensed at the time she was soliciting prospective tenants for St. Louis Place while employed by respondents. Fair or not, the legislature has clearly barred her right to "bring or maintain an action ... for the recovery of compensation for services rendered" in real estate transactions without first alleging and proving that O'Conner was "a licensed real estate broker or salesman at the time when the alleged cause of action arose". Section 339.160 RSMo 1986. This, she did not do. She proved no damages other than lost commissions. Missouri courts are firm in denying relief in any case where the effect, direct or indirect, of allowing the action would be to countenance commissions earned in violation of the statute. A broker cannot recover commissions where the cause of action cannot be established without showing that the broker has violated the law. *See* 12 C.J.S. Brokers § 132 n. 66 (1980).

This situation is distinguishable from *Coldwell Bankers-Gordon Company Realtors v. Roling,* 703 S.W.2d 572, 576 [4] (Mo.App.1986). In *Coldwell Bankers-Gordon Company Realtors,* the court held only that a plaintiff should not forfeit its earned commission because of the technical initial failure to have an adequate listing agreement required by certain state regulations. 703 S.W.2d at 576. However, the court prefaced its discussion with the observation that the only matter declared to be void and unenforceable is a commission agreement where the agent does not possess a real estate license. *Id.* Thus, while overlooking strict compliance with a technical state regulation, the court essentially reiterated its position that policy considerations demand steadfast adherence to the licensing standards required by statute. Unlike *Coldwell Bankers-Gordon Company Realtors,* we are not concerned with some purely technical consideration, but with the fundamental statutory consideration that real estate brokers must be licensed in order to recover commissions.

■ O'Conner responds that to deny her the commissions she earned in producing tenants ready willing and able to occupy St. Louis Place Follman and Follman Properties Company will have received the benefit of her services for nothing. O'Conner bemoans that her financial detriment is their windfall. We agree that the application of the law under the particular facts of this case appears unfair or unduly harsh. However, the rule is that where parties who are charged with knowledge of the law undertake to enter into an agreement in violation thereof, they will be left in the position in which they put themselves. *Gilbert v. Edwards,* 276 S.W.2d at 620 [15]. Thus, O'Conner is charged with knowledge of all the provisions of chapter 339 when she agreed to accept employment with respondents under a salary arrangement that

included an agreement to split commissions. *Accord Gilbert,* 276 S.W.2d at 619.

As stated by this court in *Sandbothe v. Williams,* 552 S.W.2d 251, 255 [5] (Mo.App. 1977): "The principle is well settled that no court will lend its aid to a man who founds his cause of action upon an illegal act. This is a principle founded upon public policy, not for the sake of the defendant, but for the law's sake, and that only." (quoting *Schoene v. Hickam,* 397 S.W.2d 596, 602 (Mo.1965).

We are unpersuaded by O'Conner's suggestion that the statute, aimed at protecting a client from an unlicensed real estate person, does not encompass this private arrangement between an employee and employer, notwithstanding that the employee seeks commissions earned without benefit of the license required under law. To permit her recovery of commissions in derogation of § 339.160 RSMo 1986 subjects appellants to prosecution for violation of § 339.150 RSMo 1986. Public policy dictates our strict observance of the statutes.

We do not hold that her action in fraud is absolutely barred. We do hold that, where the only damages pleaded and proven are lost commissions, recovery is prohibited by statute. Had O'Conner established consequential damages other than lost commissions, her fraud action would be viable. Our conclusion renders unnecessary any discussion of appellants' remaining points. Judgment reversed.

KAROHL, P.J., and SMITH, J., concur.