George L. DeLONG and Rebecca S. DeLong, Plaintiffs–Respondents,

v.

HILLTOP LINCOLN–MERCURY, INC., Defendant–Appellant.

Nos. 57965, 57966.

Missouri Court of Appeals,
Eastern District,
Division Five.

June 11, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 23, 1991.

Application to Transfer Denied Sept. 10, 1991.

Bernard E. Brown, Overland Park, Kan., Bartley, Goffstein, Bollato and Lange, Richard J. Baugh, Clayton, for plaintiffs-respondents.

Dearing and Hartzog, Theodore D. Dearing, Clayton, for defendant-appellant.

SIMON, Judge.

Plaintiffs, George L. DeLong and Rebecca S. DeLong, sued defendants, Hilltop Lincoln–Mercury, Inc., Richard Powell, d/b/a Powell's Motors, and Sal Benigno, d/b/a Roman Motors, for fraud and federal odometer violations arising from their purchase of a 1980 Lincoln from Hilltop. The jury returned its verdict for $3,000 actual damages and $75,000 punitive damages in favor of the DeLongs on their fraud claim

against defendant, Hilltop Lincoln–Mercury, Inc. The jury returned its verdict for $3,000 actual damages (in favor of the DeLongs) on their fraudulent misrepresentation claim against defendant, Powell, and $5,000 in damages for their claim of violation of federal odometer law against Powell. The jury found for defendant, Benigno on both counts. The jury found for Hilltop on the DeLongs' claim under the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. Section 1981 *et seq.* (1982). Powell is not a party in this appeal.

The facts adduced at trial, viewed in a light most favorable to the verdict, are as follows. In the early summer of 1983, the DeLongs were looking to buy a low mileage used Lincoln Town Car, as a car for Mrs. DeLong. They had no success in their native Jefferson City, so they travelled to St. Louis on July 8, 1983. They stopped at a dealership in St. Peters, and initially found a car they felt was adequate. They did not buy that car, however, solely because they were told the car had been obtained from another dealer. Both Mr. and Mrs. DeLong testified repeatedly and emphatically that they specifically wanted an individually traded in, locally owned car.

The DeLongs checked into a motel and began looking through newspapers for car advertisements. They found an ad for 1980 series used Lincolns from Hilltop in St. Louis County, and Mr. DeLong called the dealership. Mr. DeLong stated he spoke to Matt McGoogan, and told him he was looking for a Lincoln, preferably a Town Car, traded in by an individual. He also said he "didn't want anything to do with" dealer trades or cars purchased at auctions. Mr. McGoogan said they had two cars that were traded in, and he and Mr. DeLong made an appointment for the next morning.

On Saturday, July 9, the DeLongs went to Hilltop and met with Mr. McGoogan. Mr. DeLong reiterated to Mr. McGoogan that they specifically wanted an individually traded Lincoln, not an auction car or a dealer trade. Mr. McGoogan replied that the two cars Hilltop had fit that requirement, but they were not Town Cars. They focused on one car, as the other was a Signature Series, and would cost more than they wished to spend. Mr. McGoogan said the car they were interested in was in "A-1" condition. Mr. DeLong lifted the hood of the car and commented on the cleanliness of the engine. Mr. McGoogan said people in St. Louis clean their engines before trading in their cars. Mr. DeLong also noticed an oil leak under the hood. He took the car for a test drive, after Mr. McGoogan noted aloud that the odometer read in excess of 42,000 miles. The car had a rough idle, and would "try to die" at stops. The computerized digital dash also appeared to Mr. DeLong to be malfunctioning. The DeLongs then discussed these and various other problems with Mr. McGoogan, who assured them they would be fixed. Those problems included door dings and scratches, oil leaks, and the battery.

Mr. DeLong then asked for the name of the prior owner. Mr. McGoogan replied he did not know, and could not find out because the bookkeeper was not there. He said he would provide the DeLongs with the name. The DeLongs accepted this and agreed to buy the car. Mr. McGoogan provided a contract, and added a list of items the DeLongs wanted to be repaired. They were also provided with a sales invoice, a federal odometer statement, and the inspection certificate, all of which showed the car's mileage to be under 43,000. The DeLongs paid $8,000 cash and traded in a car valued at $3,500. It was agreed that the DeLongs would leave the car for a week, so that Hilltop could complete the enumerated repairs.

When they returned to Hilltop on Friday, July 15, the DeLongs discovered that the only repair done was repainting the doors, and they were painted the wrong color. Mrs. DeLong testified she needed the car, so arrangements were made whereby she could drive the car back to Jefferson City and return the following Thursday for repairs. The computer malfunctioned "about fifty miles out" of St. Louis. The car also had the same problems Mr. DeLong observed during the test drive. Mrs. DeLong returned the car on Thursday, July 21 and

stayed in St. Louis overnight. On Friday, the doors had been repainted, but the other repairs had yet to be done.

As Mrs. DeLong was returning to Hilltop on Tuesday, July 26, the air conditioner went out, blowing smoke through the vents and under the hood. She pulled off the highway, shut the motor off, started it again, and was able to complete the trip. She asked Mr. McGoogan to get the car fixed, and left it again, this time for two weeks. Upon her return in the middle of August, Mr. McGoogan told her she could "take the car if [she wanted] to, but it's still in pieces." She returned to Jefferson City, and she and her husband drove to St. Louis three days later to pick up the car. On the drive home, the computer malfunctioned again and the air conditioning would "come and go."

Mrs. DeLong drove the car in Jefferson City during the week. It would die in traffic, and she would have to call Mr. DeLong. She had to quit driving it and drove Mr. DeLong's car thereafter. Mr. DeLong attempted repairs in Jefferson City, which improved the car's performance somewhat.

The DeLongs became suspicious about the transaction, due to the problems with repairs, and Mr. McGoogan's refusal to supply the name of the previous owner, despite repeated requests. Mr. McGoogan testified that obtaining the name of a previous owner was a fairly simple procedure. The DeLongs did not drive the car again. Mr. DeLong then requested a title history.

The DeLongs received the title history in September of 1983, which showed the car came from Powell Used Cars in Benton, Kentucky (in the western part of that state), to Roman Motors, to Hilltop. The DeLongs then demanded, orally and in writing, that Hilltop repurchase the car. Hilltop refused.

In 1985, upon their counsel's suggestion, the DeLongs requested that the Highway Patrol investigate the mileage. In September of 1985, they received a letter and accompanying documents from the Patrol stating that the car, purchased new by McCullagh Leasing, Inc. in Roseville, Mi-

chigan, was sold to "Richard Powell Used Cars" on June 24, 1983, and stated the mileage as 74,147. Subsequent inquiry indicated Mr. Powell sold the car at an auction on July 8, 1983, with the miles indicated as 42,221. Sal Benigno, d/b/a Roman Motors, purchased the car. Mr. Benigno was the used car manager at Hilltop in July, 1983. He would purchase cars, put them on Hilltop's lot, and when sold Mr. Benigno would be reimbursed.

The DeLongs filed their five-count petition, sounding in fraud, breach of warranty under Magnuson–Moss (consumer products warranty act), state odometer violations, and federal odometer violations under 15 U.S.C. Section 1981 *et seq.* against Hilltop, Powell, and Benigno on October 30, 1986. At trial, on December 4–8, 1989, the DeLongs elected to submit only the fraud and federal odometer counts against Hilltop. More facts will be adduced as necessary to resolve the points presented by the parties.

In its appeal, Hilltop asserts error because: (1) introduction; (2) the sale contract and plaintiff's statements regarding her understanding of that contract should have been admitted into evidence; (3) the alleged representations made by Hilltop were not material as a matter of law; (4) plaintiff did not present sufficient evidence of intent to justify an award of punitive damages; (5) the punitive damages awarded by the jury were excessive; (6) the actual damages found by the jury were excessive as a matter of law; (7) the Court erred in allowing the jury to hear the testimony of Gary Conatser and Kevin Geiger; in that: (a) the testimony of Gary Conatser and Kevin Geiger should not have been allowed because they were not disclosed as expert witnesses; (b) the Court erred in allowing the testimony of Gary Conatser and Kevin Geiger in that Plaintiffs never established an adequate foundation for the testimony; and (c) the testimony of Gary Conatser and Kevin Geiger is inadmissible hearsay; (8) the admission of settlement negotiations in plaintiffs' opening statement as well as during the testimony of plaintiffs and in closing argument was prejudicial error; (9) the Court erred in admit-

ting the deposition testimony of Matt McGoogan; (10) plaintiffs improperly inquired during voir dire about Hanover Insurance Company; and (11) the award of punitive damages was excessive due to the bias and prejudice created by plaintiffs.

In their cross-appeal, the DeLongs assert that the trial court erred in giving Instruction No. 11, the verdict director on the federal odometer count, because "intent to defraud" was defined as acting with a "specific intent to deceive or cheat," rather than as "recklessness" or a similar, lesser standard.

We initially note that Hilltop's Points Relied On I, II, III, IV, V, VI, X, and XI are deficient, as they do not state wherein and why the trial court erred or even mention a trial court ruling. Rule 84.04(d); *McMullin v. Borgers*, 806 S.W.2d 724, 728 (E.D.Mo.1991). As such, the points preserve nothing for review. *Thummel v. King*, 570 S.W.2d 679, 685–6 (Mo. banc 1978). Although the points in its reply brief have been supplemented, counsel would be well advised to review *Thummel* and its progeny, especially *Hoffman v. Koehler*, 757 S.W.2d 289, 292[2] (Mo.App. 1988). We shall *ex gratia* look to the argument portion of the briefs for our review. *Id.*

■ Hilltop's first point on appeal and the text of the argument does not indicate an addressable trial court error with clarity. Looking to its reply brief, pursuant to *Independent Stave Co., Inc. v. Higdon*, 572 S.W.2d 424, 429[6] (Mo. banc 1978), Hilltop asserts trial court error in overruling of both Hilltop's motion for directed verdict at the close of the plaintiffs' case and its motion for new trial or judgment n.o.v. at the conclusion of the case because the DeLongs failed to make a submissible case of fraud.

We note that Hilltop has waived its claim with respect to the disposition of its motion for directed verdict at the close of the plaintiffs' case, as they thereafter presented evidence on their own behalf. *Holland v. American Republic Ins. Co.*, 779 S.W.2d 775, 776[1] (Mo.App.1989).

The elements of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or his ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) his right to rely thereon; and, (9) the hearer's consequent and proximately caused injury. *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443[1] (Mo. banc 1988).

Hilltop argues there were "significant evidentiary problems" with the DeLongs' case, such as materiality of the representation, intent, reliance, and right to rely, without mentioning what those problems were. We are not required to search the record for errors "... in an attempt to interpret the thrust of a party's contentions and correct counsel's deficiencies." *McMullin v. Borgers*, 806 S.W.2d at 730. The reply brief focuses on the issue of materiality, adequately addressed in Point III, *infra*. Point denied.

■ Hilltop next contends that the sale contract and Mrs. DeLong's testimony surrounding it should have been admitted into evidence.

At trial, Hilltop introduced Exhibit A, the retail buyer's order, during their cross-examination of Mrs. DeLong. Counsel for the DeLongs objected, the trial court sustained the objection, and Hilltop made an offer of proof. Hilltop expected Mrs. DeLong to testify that she read and signed the contract, including the provisions that all used cars were sold "as is," and that the terms of the written contract comprised the entire agreement. Hilltop argues this would have been "extremely damaging," because Mrs. DeLong was a legal secretary, and was relevant to disprove reliance on Mr. McGoogan's representation concerning the car.

Aside from whatever probative value the evidence of Mrs. DeLong's occupation would have had in regard to her understanding of the disclaimers, a defense to this type of fraud action cannot be predicated upon the contract by which the sale

of the car was made. *Slusher v. Jack Roach Cadillac, Inc.*, 719 S.W.2d 880, 882[1] (Mo.App.1986). The facts of *Slusher* are similar to this case. There, the salesman assured the Slushers that the van they subsequently purchased had not been wrecked and was in excellent condition. Both assertions proved to be false, and the Slushers sued. At trial, Roach introduced the buyer's order, containing "as is" language. On appeal Roach asserted the "as is" clause was relevant to show whether any representations were made, an argument the *Slusher* court rejected. *Slusher*, 719 S.W.2d at 882.

Here, Hilltop argues admission of the contract, and testimony surrounding it, are relevant to disprove reliance on Hilltop's representations concerning the car, and that *Slusher* is distinguishable because it only dealt with fraud issues, while this case was tried on fraud and warranty theories. We disagree. The issue submitted to the jury was fraud, for which two elements are the making of a representation and reliance. If the "as is" clause is not relevant to show representations were made in a fraud action, it follows that the clause cannot be a basis for showing reliance on those representations. Point denied.

Hilltop next asserts the representations "allegedly" made were not material as a matter of law. There is not even a passing reference to a trial court ruling, either in the point relied on or in the argument. No representation is mentioned in the argument, but we must assume the point concerns itself with the representation that the car was an individual trade-in, as the argument is addressed to the wisdom of the DeLongs' criterion. The reply brief supports this assumption.

One of the elements of a fraud case is that the misrepresentation must be material. *Heberer*, 744 S.W.2d at 443. The test of materiality of a representation is an objective one, to be evaluated by the facts and circumstances of the transaction in question. *Carnahan v. American Family Mut. Ins. Co.*, 723 S.W.2d 612, 615[4] (Mo. App.1987). A misrepresentation is material if it is likely to induce a reasonable person to agree, or if the maker knows it would be likely to induce the hearer to do so. *Best v. Culhane*, 677 S.W.2d 390, 394[7] (Mo.App. 1984). The misrepresentation need not be the sole inducement to act; it is sufficient if it is a material factor in the decision. *Manufacturer's Am. Bank v. Stamatis*, 719 S.W.2d 64, 70[9] (Mo.App.1986).

Here, Hilltop appears to argue that a representation that a car is an individual trade-in is not objectively material because there is no evidence an individual trade-in is any better than a dealer trade or an auction car. Hilltop argues that several "experts" (most of whom are defendants) testified there was no difference in the value of vehicles obtained from auctions or dealers as opposed to individuals, and that the DeLongs did not produce any evidence, other than their testimony, that the car's origin was important to them.

Hilltop's position does not address the materiality of the representation, but rather argues the weight of the evidence, which is not an issue for this court. *Fieser v. Snyder*, 797 S.W.2d 752, 755[9] (Mo.App. 1990). The evidence of value goes to, if anything, the measure of damages. At any rate, it is clear that the misrepresentation was a material factor in the DeLongs' decision to buy the car. They strongly and repeatedly insisted they did not want a dealer trade or an auction car, and had previously rejected what appeared to be a suitable car on the sole basis it was a dealer trade. Mr. McGoogan was well aware of the DeLongs' wishes. We find no error. *Cf. Beshears v. S–H–S Motor Sales Corp.*, 433 S.W.2d 66 (Mo.App.1968) (car purchased on representation it was a demonstrator, when in fact it was previously owned by an individual, was actionable fraud). Point denied.

We next address Hilltop's Points Relied On IV, V, and XI, all dealing with the punitive damages award. Hilltop contends the DeLongs did not present sufficient evidence of intent to justify the award, and the award was excessive and due to the bias and prejudice created by them.

Sufficiency of the evidence to warrant a jury award of punitive damages is a question of law, within the reasoned discretion of the trial court. *Moon v. Tower Grove Bank & Trust Co.,* 691 S.W.2d 399, 401[1] (Mo.App.1985). In reviewing the submissibility of punitive damages, we consider the evidence in the light most favorable to submissibility. *Walker v. Gateway Nat'l Bank,* 799 S.W.2d 614, 617[2] (Mo.App. 1990). Punitive damages are awarded where defendant's conduct is outrageous, because of evil motive or a reckless indifference to the rights of others. *Burnett v. Griffith,* 769 S.W.2d 780, 789[12] (Mo. banc 1989).

We find no error in submitting the issue of punitive damages. There is sufficient evidence from which a jury could find a culpable mental state or reckless disregard for an act's consequences (from which evil motive is inferred). *See Burnett,* 769 S.W.2d at 787. Viewing the evidence in the light favorable to submission, the evidence indicates Mr. McGoogan testified he routinely told customers a car was, to his knowledge, a trade-in, regardless of its true origin. He did so in his dealings with the DeLongs, even though he was made aware of the importance of the car's past. There was also evidence of Mr. McGoogan's refusal to provide the name of the prior owner despite the ease of doing so, the limitless problems getting the car fixed after the sale, and Hilltop's refusal to repurchase the car after its true prior ownership was discovered. The trial court did not abuse its discretion in submitting the punitive damages issue.

■ Hilltop also asserts the punitive damages award was excessive and due to bias and prejudice created by the plaintiffs. Once the trial court decides the issue of punitive damages should be submitted to the jury, the matter becomes purely and peculiarly one for the jury, and is not reversible absent a clear showing of abuse of discretion. *Mullen v. Dayringer,* 705 S.W.2d 531, 536[14] (Mo.App.1985). Only in extreme cases will an appellate court interfere. *Hupp v. North Hills Lincoln–Mercury, Inc.,* 610 S.W.2d 349, 357[12]

(Mo.App.1980). A punitive damages award need only bear a reasonable relationship to the injury, while punishing a defendant for outrageous conduct and deterring such conduct in the future. *VanEaton v. Thon,* 764 S.W.2d 674, 677[5] (Mo.App.1988).

We find no abuse of discretion in the jury's award. While the award is generous and exceeds most of the awards in the cases called to our attention, that alone does not end the inquiry. The amount of actual damages in this case likewise is not an indication that the punitive damages award is excessive. *See Holcroft v. Missouri–Kansas–Texas Railroad Company,* 607 S.W.2d 158 (Mo.App.1980) (jury award of $1 nominal and $75,000 punitive damages affirmed). We have carefully reviewed the record, and find no evidence of bias or prejudice on the jury's part. Points IV, V, and XI are denied.

■ Hilltop next asserts the actual damages found by the jury were excessive as a matter of law. The argument in its brief on this point is two-fold. First, Hilltop attacks the award on the ground that the DeLongs' testimony concerning value of the car is "virtually useless." Second, Hilltop asserts the DeLongs suffered no damage because they resold the car in Jefferson City for their purchase price, $11,500.

The measure of damages in a fraud case is the "benefit of the bargain rule," which allows the defrauded party to recover the difference between the property's actual value and what its value would have been if it had been as represented. *Heberer,* 744 S.W.2d at 443; *O'Conner v. Follman,* 747 S.W.2d 216, 220[3] (Mo.App.1988). "If an award of damages is within the range of evidence, a jury's verdict ... is not erroneous although it does not find an amount precisely in accordance with the evidence of either of the parties." *McDaniel v. Grady Bros., Inc.,* 764 S.W.2d 177, 178[2] (Mo. App.1989).

■ Hilltop's position as to the DeLongs' testimony is incorrect. An owner of property may testify as to its value. *Grate v. Richards,* 725 S.W.2d 45, 49[11] (Mo.App. 1987); *Comegys v. Chrysler Credit Corp.,* 577 S.W.2d 873, 878[5] (Mo.App.1979). The

argument that the resale of the car on November 3, 1988, for $11,500 "belied" the DeLongs' estimates of value reduction is likewise incorrect. Although resale of property close to the date of the fraudulent transaction "... may be a relevant indication of the property's market value on the closing date, the mere record of such a figure may not even be helpful in determining fair market value, much less conclusive on the point." *Koch v. Victoria Loan Co.,* 652 S.W.2d 212, 216[5] (Mo.App.1983).

Hilltop's argument, that they "tendered several expert witnesses," all of whom testified there was no difference in value between an auction car and an individual trade-in, goes to the credibility of witnesses and the weight given to their testimony. The jury is free to believe all, part, or none of the testimony presented, and are the sole arbiters of its weight. *Roark Motor Lodge Interval Sales Corp. v. Lindner,* 779 S.W.2d 684, 686[2] (Mo.App.1989). The actual damages award of $3,000, is within the range of the DeLongs' estimation of between $4,000 to $6,000, and Hilltop's assertion of no actual damages. Point denied.

■ Hilltop's seventh point on appeal asserts error in allowing Gary Conatser and Kevin Geiger to testify for three reasons: (1) they were undisclosed expert witnesses; (2) an inadequate foundation was laid for their testimony; and (3) their testimony constituted inadmissible hearsay.

Gary Conatser testified he was a loan officer at the credit union where Mr. DeLong was a member. Prior to that, he owned a car dealership and left that business in 1979. He spoke with Mr. DeLong in June or July of 1983 about buying a used luxury sedan. They discussed price and dealership, and Mr. Conatser suggested Hilltop might have "more to offer" based on their volume. They also discussed auction and dealer cars.

Mr. Conatser testified that as a loan officer, he had continual, daily contact with dealers, including those who go to auctions in St. Louis. He stated that during the time he was in the auto business there was a reputation in the industry that a "large

number, probably most" of the cars sold at auctions had rolled-back odometers, and that this reputation still exists. He also testified that there was a widespread reputation in the industry that most of the cars coming from western Kentucky had altered odometers and "cosmetic tricks played on them." This reputation was known among St. Louis dealers.

Kevin Geiger, a trooper with the Missouri State Highway Patrol, testified he has been investigating automobile dealer violations relating to inspections, odometer rollbacks, and the like, since 1983. He testified that in the course of his work he had frequent communications with dealers in an eleven-county area in Troop C, which included St. Louis County. During the investigations of odometer rollbacks and salvage yards, he frequently had occasion to talk with dealers about where cars came from and auction cars. In the course of these communications, he stated he was aware of the reputation that "when you deal with auctions, ... you have about a fifty percent chance of getting a car that's either a rollback in the odometer, or it's a misrepresented car." He went on to state that this was common knowledge with dealers, and that many "main" dealers avoided auction cars because of their reputation. This was also true of cars that came from western Kentucky.

Hilltop first contends that this "reputation" testimony was inadmissible because Conatser and Geiger were not disclosed in interrogatories as expert witnesses.

An "expert witness" is a witness that "... by reason of education or specialized experience possesses superior knowledge respecting a subject about which persons who have no particular training are incapable of forming an accurate opinion of or deducing correct conclusions therefrom." *Eichelberger v. Barnes Hospital,* 655 S.W.2d 699, 704[1] (Mo.App.1983). Even if some of a witness' testimony incidentally calls upon his learning and experience, that does not automatically make him an expert witness. *DeLaporte v. Robey Bldg. Supply, Inc.,* 812 S.W.2d 526, 531–533 (E.D.Mo., 1991).

Hilltop concedes in its brief that the purpose of the testimony at issue was to offer evidence of the community reputation of auction cars. Neither Conatser nor Geiger offered any opinions on the subject, and did not conclude that the reputation was true or false. Their only testimony concerning a reputation of auction cars was the existence of one. Thus, there was no need to disclose them as expert witnesses.

■ Hilltop further asserts that, even if Conatser and Geiger are deemed to be lay witnesses, the testimony still should have been excluded because they were not disclosed during the DeLongs' depositions. Hilltop has not provided us with transcripts of the depositions, making it impossible to review its claim. *See In re Marriage of Kohler,* 778 S.W.2d 19, 21[6] (Mo.App. 1989). Even so, Hilltop has not demonstrated prejudice, as it presented testimony to rebut the reputation evidence, and made no allegations of surprise at trial, or requests for continuances. Point denied.

■ Hilltop next asserts the reputation testimony should not have been admitted because its foundation was inadequate. A trial court has wide discretion in admitting evidence, which will not be overturned absent abuse. *DeLaporte,* 812 S.W.2d at 533. We find no such abuse here. The reputation evidence in this case is not the type normally associated with the term, which usually refers to a witness' reputation in a community for veracity, most often for impeachment purposes. *See Cantrell v. Superior Loan Corp.,* 603 S.W.2d 627, 639 (Mo.App.1980). There appears to be no case law in Missouri relative to evidence of the reputation of an industry.

■ So long as a reputation witness' contact, and the capacity and frequency of that contact, with the industry's community is firmly established, the witness is competent to testify on that subject. We believe that both Mr. Conatser and Trooper Geiger adequately established the fact they had fairly frequent contact with the community in question at the time of the transaction, so as to be competent to testify as to the existence of a reputation concerning auction cars. Point denied.

■ Hilltop's final assault on the reputation testimony is that it is inadmissible hearsay. "Hearsay is a statement of another, reported in court by a witness, *who offers it to prove the truth of the matter asserted* therein." *In the Interest of A.M.K.,* 723 S.W.2d 50, 53[10] (Mo.App. 1986) (emphasis ours). Here, the testimony was introduced, not to prove the truth of reputation that auction cars are likely to have rolled-back odometers, but to show that such a reputation existed. The purpose of so doing was two-fold: to show why the DeLongs were so vehemently opposed to buying auction cars, and to show that Hilltop was on notice that there was a chance the 1980 Lincoln had a rolled-back odometer. We find no error. Point denied.

■ Hilltop's eighth point alleges the admission of settlement negotiations between the parties at various stages during trial was error.

In their opening statement the DeLongs stated:

Well, they asked Hilltop to take this car back for what they paid for it after those two months, in light of finding out that it had come from a dealer. Hilltop said no. They had an attorney write a letter to Hilltop saying please buy the car back for what they paid for it. Just that price. Not asking for anything extra. Not even asking for a refund of their sales tax or the finance charges, not asking for any other compensation for any of their problems. And Hilltop, Mr. Dearing on behalf of Hilltop—

\*　　\*　　\*　　\*　　\*　　\*

Mr. Dearing wrote a letter in response, "We simply won't take it back." That's that. That's when this case was started.

In addition, Mrs. DeLong testified about these events, and a letter to Hilltop from the DeLongs' former counsel demanding repurchase was admitted into evidence.

It is true that offers of compromise of the existing controversy are generally inadmissible. *Coffman v. Faulkner,* 591 S.W.2d 23, 26[4] (Mo.App.1979).

Here, the DeLongs tried the case on several theories, including a Magnuson–Moss warranty theory, which requires a defendant to be given an opportunity to cure. 15 U.S.C. Section 2310(e) (1982); *Hughes v. Segal Enterprises, Inc.*, 627 F.Supp. 1231, 1237 (W.D.Ark.1986). The court allowed the evidence in for that limited purpose. This theory, however, was not submitted to the jury. Point denied.

■■■ Hilltop's ninth point asserts the trial court erred in admitting Matt McGoogan's deposition testimony. At trial, portions of Mr. McGoogan's deposition were read before he took the stand. Hilltop takes particular exception to the following: "And I always tell people where I think [the car] came from. And I always said to them, 'I believe it was a trade-in.'" Hilltop argues this was prejudicial because it was taken out of context without giving Mr. McGoogan a chance to explain, and Mr. McGoogan was a very important defense witness.

As a general rule, in the absence of proof a witness is unavailable for trial, that witness' deposition is inadmissible at trial. *Haswell v. Liberty Mut. Ins. Co.*, 557 S.W.2d 628, 638[15] (Mo. banc 1977). Here, however, we find no prejudicial error. Mr. McGoogan testified at trial, and his testimony was completely consistent with the deposition excerpts read to the jury. *See Kaiser v. Pearl*, 670 S.W.2d 915, 920[15] (Mo.App.1984). Point denied.

■■■ Hilltop's final point asserts that plaintiff improperly inquired during voir dire about Hanover Insurance Company. This point is not preserved for review because Hilltop made no objection at trial. *Eagleburger v. Emerson Elec. Co.*, 794 S.W.2d 210, 228[12] (Mo.App.1990).

At any rate, we find no prejudicial error. Counsel made one inquiry of the prospective jurors concerning any connection to Hanover Insurance. The whole exchange was transcribed in nineteen lines of a 673-page transcript. The subject was never broached again. Point denied.

■■■ In their sole point on cross-appeal, the DeLongs argue the trial court erred in giving Instruction No. 11, the verdict director on the federal odometer claim, and in overruling their motion for new trial based on that error, because it required the jury to find Hilltop had a "specific intent to deceive or cheat" in order to find for the DeLongs.

It is well settled that in order to reverse a jury verdict on grounds of instructional error, the instruction in question must have misdirected, misled, or confused the jury. *DeLaporte*, No. 57719, 812 S.W.2d at 530. Failure to submit an instruction a party is entitled to is error, warranting reversal if the merits of the action are materially affected. *Id.*

At trial the court gave the following as Instruction No. 11, basing its decision on *Bizzle v. Enterprise Leasing*, 741 S.W.2d 84 (Mo.App.1987):

> Your verdict must be for the plaintiffs and against the defendant Hilltop Lincoln–Mercury, Inc. for violation of federal odometer law if you believe:
>
> First, that defendant Hilltop Lincoln–Mercury, Inc. falsely represented that the mileage on the 1980 Lincoln was under 43,000 miles;
>
> and [sic], Second, that defendant Hilltop Lincoln–Mercury, Inc., acted with intent to defraud someone.
>
> To act with the intent to defraud means to act with the specific intent to deceive or cheat, ordinarily for the purpose of bringing some financial gain to one's self.

The DeLongs argue that the definition of "intent to defraud" given in the instruction was improper, and that the correct standard was embodied in their Proposed Instruction A.

> Your verdict must be for the plaintiffs and against the defendant Hilltop Lincoln–Mercury, Inc. for violation of federal odometer law if you believe:
>
> First, that defendant Hilltop Lincoln–Mercury, Inc. falsely represented that the mileage on the 1980 Lincoln was under 43,000 miles;

and [sic], Second, that defendant Hilltop Lincoln–Mercury, Inc., acted with intent to defraud someone.

To act with the intent to defraud in this instruction means to make a false representation with knowledge that it is false, or without knowledge of whether it is true or false.

■ The cases cited by Hilltop, such as *Bizzle* and *Dubis v. Cunning*, 765 S.W.2d 722 (Mo.App.1989), are inapposite because they address the required level of intent needed to prevail on *state* odometer claims. The definition of intent to defraud for purposes of recovery under the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. Section 1981 *et seq.* (the statutory provisions for federal odometer requirements and violations) includes actions taken with reckless disregard for the truth. *Tusa v. Omaha Auto Auction, Inc.*, 712 F.2d 1248, 1253–4[4] (8th Cir.1983). Therefore, instructing the jury that "intent to defraud" is defined as a "specific intent" to deceive is erroneous. *Haynes v. Manning*, 917 F.2d 450, 452[2] (10th Cir.1990). We reverse and remand. In doing so, we are mindful of *Freeman v. Myers*, 774 S.W.2d 892, 895 (Mo.App.1989), requiring a plaintiff to choose one theory of recovery after the verdict.

We affirm all points on Hilltop's appeal, and reverse and remand for a new trial on the DeLongs' claim under the federal odometer statute.

Judgment affirmed in part and reversed in part.

CRIST and GARY M. GAERTNER, JJ., concur.